**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

United States District Court
District of Texas

JAN    4 2001

Michael N. Milby, Clerk

| | |
|---|---|
| **ROMEO SALINAS,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **ROBERT E. RUBIN,** | § |
| **Secretary of the Treasury,** | § |
| | § |
| **Defendant.** | § |

**Civil Action No. L- 99-25**

United States District Cou...
Lodgment ...

JAN - 9 2001

Michael N. Milby
Clerk of Court

## ORDER AND MEMORANDUM

Before the Court are Plaintiff's Motion for Attorney's Fees and Costs and Defendant's Motion for Remittitur. A hearing on both Motions was held on September 13, 2000 and this Court has duly considered them. Defendant's Motion for Remittitur is hereby DENIED and Plaintiff's Motion for Attorney's Fees and Costs is hereby GRANTED in the amount of $156,849.00 in fees and $26,757.43 in costs.

## I. Background

Plaintiff, an agent with the United States Customs Service, brought suit against the United States in Federal District Court alleging that the Defendant had violated federal law by failing to promote him to the position of Senior Special Agent. Plaintiff asserted three separate violations in his cause of action: Title VII race discrimination, Title VII retaliation, and age discrimination under the Age Discrimination in Employment Act (hereinafter ADEA). *See* 42 U.S.C. § 2000e-2; 29 U.S.C. § 621; 42 U.S.C. § 2000e-3(a). After Plaintiff rested, this Court dismissed the claim alleging age discrimination under the ADEA, but declined to dismiss the remaining Title VII claims.

1

57

At trial, Plaintiff presented testimony that he suffered emotional and physical harm from not receiving the promotion. Plaintiff testified that stress from Defendant's retaliation caused him to lose self esteem and become depressed and withdrawn from his family and friends. Additionally, he testified that his blood pressure and cholesterol levels increased, resulting in out-of-pocket medical expenses totaling around $15,000. Plaintiff's wife, Debbie Salinas, also testified that Plaintiff appeared depressed and withdrawn as a result of his not being promoted.

Following a five-day trial, the jury returned a verdict for the Defendant on the claim of race discrimination under Title VII. The jury, however, found for the Plaintiff on the claim of retaliation and awarded compensatory damages in the amount of $1 million. This award was subsequently reduced to $300,000.00 in compliance with the statutory cap placed on compensatory damage awards in Title VII cases against the United States. *See* 42 U.S.C. § 1981a(b)(3)(D).

## II. Defendant's Motion for Remittitur

Defendant has moved for a remittitur of the $300,000 in compensatory damages awarded to Plaintiff. Defendant argues that: 1) the evidence of emotional damages presented by Plaintiff was insufficient to sustain the $300,000 award, and 2) Plaintiff's damages were not sufficiently linked to the retaliatory non-promotion. For the following reasons, this Court rejects these arguments and denies Defendant's Motion for Remittitur.

### A. Whether Plaintiff's Evidence is Insufficient

Under Title VII, plaintiffs are entitled to recover compensatory damages up to the statutory

2

limit[1] upon "proof of actual injury." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 (5th Cir. 1996) (citing *Carey v. Piphus*, 435 U.S. 247, 255-56 (1978)). The Fifth Circuit has looked to the EEOC Guidelines to define "actual injury" in the context of nonpecuniary losses:

> Damages are available for the intangible injuries of emotional harm such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Other nonpecuniary losses could include injury to professional standing, injury to character and reputation, injury to credit standing, loss of health, and any other nonpecuniary losses that are incurred as a result of the discriminatory conduct. Nonpecuniary losses for emotional harm are more difficult to prove than pecuniary losses. Emotional harm will not be presumed simply because the complaining party is a victim of discrimination. The existence, nature, and severity of emotional harm must be proved. Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown. Physical manifestations of emotional harm may consist of ulcers, gastrointestinal disorders, hair loss, or headaches.

*See id.* at 939 (quoting *EEOC Policy Guidance No. 915.002 sec. II(A)(2)*, at 10 (July 14, 1992)). Defendant concedes that Plaintiff has met this standard of "actual injury," and therefore merits some award beyond merely nominal damages. Defendant argues, however, that the evidence presented by Plaintiff is insufficient to warrant an award equal to the statutory limit of $300,000. This Court disagrees and finds that Plaintiff's evidence is sufficient to sustain the $300,000 damage award.

A jury verdict is entitled to significant deference and may be overturned only if it is so excessive as to be "contrary to right reason" or "entirely disproportionate to the injury sustained." *Eiland v. Westinghouse Electric Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). Compensatory damage awards for emotional harm present a difficult situation for courts because emotional distress is not easily subject to monetary quantification. *See id.* Therefore, the Fifth Circuit requires plaintiffs claiming damages from emotional harm to establish that they suffered "demonstrable emotional

---

[1] Neither party disputes that the statutory limit on compensatory damages in this case is $300,000 pursuant to 42 U.S.C. §§ 1981a(a)(1) and (b)(3)(D).

distress" in a manner "sufficiently articulated" to show that a "genuine injury" has been sustained. *See Vadie v. Mississippi State University*, 218 F.3d 365, 377 (5th Cir. 2000) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). Once the required evidence of the specific emotional harm is introduced, the jury's award must be sustained unless there is a clear basis for reversal. *See Eiland v. Westinghouse Electric Corp.*, 58 F.3d 176, 183 (5th Cir. 1995) (asserting that a "damage award may be overturned only upon a clear showing of excessiveness"); *Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 (5th Cir. 2000) (sustaining a $100,000 jury award because "judgments regarding noneconomic damages are notoriously variable" and the Court found "no basis to reverse the jury's evaluation") (quoting *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)).

In the instant case, Defendant is arguing that Plaintiff has failed to "sufficiently articulate" the "genuine injury" he suffered as a result of Defendant's retaliatory behavior. Plaintiff's testimony established that he "lost a lot of self esteem," felt like "less than an agent," lost sleep, began to have "more distant" relationships with his wife and son, and experienced paranoia about being followed at home and at work. Plaintiff further testified that the stress of the retaliation caused him to seek medical attention for high blood pressure and cholesterol. This evidence was corroborated by Plaintiff's wife, who testified that Plaintiff appeared depressed and withdrawn as well as anxious and paranoid. Defendant, however, argues that these representations constitute nothing more than broad assertions of emotional injury and that they lack the level of detail required to sustain the award. *See Vadie v. Mississippi State University*, 218 F.3d 365, 377 (5th Cir. 2000) (finding that "neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages") (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)).

4

Defendant compares this case to *Vadie v. Mississippi State University*, in which the Fifth Circuit vacated a Title VII compensatory damage award of $300,000 on the ground that the record was "devoid of any medical evidence supporting any injury" or "any specific evidence whatsoever supporting Dr. Vadie's broad assertions of emotional injury." *Id*. at 378. The circumstances in *Vadie*, however, differ greatly from those in the instant case. In *Vadie*, the plaintiff's own testimony was the sole source of evidence on emotional injury and it consisted of a nine-line response to a single question.[2] Perhaps even more significantly, the Fifth Circuit's analysis of the amount of the verdict proceeded from an entirely different starting point. In particular, the compensatory damage award in that case was based on the jury's determination that the defendant was liable for both racial discrimination and retaliation against the plaintiff. *Id*. at 376. Because the *Vadie* Court reversed the jury's finding of discrimination, the $300,000 award had to have been "supported on the evidence of the injury related to the retaliation claim alone." *Id*. The Court determined there was no such support and then independently assessed the proper amount of damages for the retaliation claim alone to be $10,000. *Id*. at 378.

In the instant case, Plaintiff testified over at least nine pages of transcript about the emotional injuries he suffered. *Cf. Brady v. Fort Bend County*, 145 F.3d 691, 719 (5th Cir. 1998) (denying emotional damages and noting that the most that any plaintiff had testified in regards to their

---

[2] The evidence of emotional harm presented by plaintiff Vadie consisted of the following response to a single question:

> . . . It destroyed me. It totally ruined me, and I become [sic] sick, totally ill, physically, mentally, and everything. I took many doctors, many pills. I did not know what to do, where to go, what to say. I did not know whether it was nighttime or daytime. I could not sleep for months at a time. Headache, nausea. Still I am under severe doctor surveillance because of what they have done to me. . . .

*Vadie v. Mississippi State University*, 218 F.3d 365, 377 (5th Cir. 2000).

emotional damages, was two and one-half pages of transcript). This testimony was corroborated by Plaintiff's wife who described in detail the distance that had developed in her relationship with Plaintiff since Defendant's retaliatory behavior. *Cf. id.* at 719 (criticizing the plaintiffs for not "present[ing] corroborating testimony from a spouse, family member, friend, or coworker"). She testified that she often would not know what to say to him or how to approach him "because he was always in some other world." She described the difficulties Plaintiff had had with high cholesterol and blood pressure and stated that, at one point, Plaintiff nearly had to be hospitalized for these medical problems. Plaintiff himself testified that his fear of reprisal from the United States Customs for pursuing the instant claim led him to be on constant guard when leaving work, driving home, or when he was around his house. *Cf. id.* at 720 (commenting that plaintiffs' testimony merely "consisted of one-word, yes-or-no answers to leading questions").

Despite Plaintiff's presentation of lengthy testimony describing the emotional distress he suffered, Defendant claims that Plaintiff's evidence remains insufficient because no additional medical evidence was presented. The Fifth Circuit, however, has never required that medical evidence be presented in order to sustain an award for emotional harm under Title VII.[3] *See Brady v. Fort Bend County*, 145 F.3d 691, 720 (5th Cir. 1998) (noting that "[u]nder *Patterson*, it does not matter what type of evidence is used to satisfy *Carey's* specificity requirement, so long as that standard is successfully met"). In fact, a plaintiff's uncorroborated testimony, by itself, can sustain

---

[3] The guidelines applicable to emotional damage awards under Title VII are the same as those applicable to § 1981. *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) ("nothing . . . suggests that we should analyze claims for emotional distress under Title VII using different guidelines than those explained above for § 1981 emotional distress claims").

a damage award.[4]  *See id.* (finding that "[w]hen a plaintiff's testimony is particularized and extensive, such that it speaks to the nature, extent, and duration of the claimed emotional harm in the manner that portrays a specific and discernable injury, then that testimony alone may be sufficient").

In this case, Plaintiff's testimony was corroborated by his wife and detailed the emotional damages sufficiently to sustain the award of $300,000.  This Court recognizes that this is a large award, however, "[j]udgments regarding noneconomic damages are notoriously variable" and we find no other "basis [on which] to reverse the jury's evaluation." *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (sustaining jury awards of $100,000 and $75,000 based solely on plaintiffs' testimony).[5]

## B. Whether Plaintiff's Damages were Sufficiently Linked to the Retaliation

Defendant claims that, even if Plaintiff adequately proved that he sustained $300,000 in damages, Plaintiff failed to prove that those damages were related to the Defendant's retaliatory

---

[4] Out of the ten Fifth Circuit opinions that have dealt with the issue of emotional damages in the context of claims under Title VII, § 1981, or § 1983 since *Patterson*, at least six of them have sustained the damage award. And four out of the six sustained emotional damage awards were based solely on the plaintiff's testimony. *See Forsyth v. City of Dallas*, 91 F.3d 769,774 (5th Cir. 1996) (sustaining jury awards of $100,000 and $75,000 for plaintiffs whose sole evidence was their own testimony); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 809 (5th Cir. 1996) (sustaining an award of $7500 on the testimony of plaintiff and a friend of the plaintiff); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (sustaining a $5000 award based solely on plaintiff's testimony); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278 (5th Cir. 1999) (sustaining a jury award of $19,000 ); *Vance v. Union Planters Corp.*, 209 F.3d 438 (5th Cir. 2000) (sustaining an award of $300,000 -- subject to a verification of the statutory limit -- on the testimony of the plaintiff and a psychologist); *Williams v. Trader Publishing Co.*, 218 F.3d 481 (5th Cir. 2000) (sustaining an award of $100,000 solely on plaintiff's testimony).

[5] In fact, the jury in the instant case awarded a $1 million verdict to Plaintiff, signifying that they assessed Plaintiff's damages as far in excess of the statutory limit of $300,000.  While such a large verdict can be indicative of a jury having been emotionally swayed, the instant case does not suggest such a conclusion.  The fact that the jurors considered and rejected Plaintiff's claim of racial discrimination demonstrates that they dispassionately evaluated the evidence before them.  Further, the Defense has not contested the jury's rejection of Plaintiff's discrimination claim.  And this Court cannot allow Defendant to accept only the portions of the verdict it likes while rejecting the portions it dislikes.

non-promotion.  Defendant specifically argues that  "[i]t is much more likely that any emotional distress suffered by [P]laintiff would have been caused by his involvement in the Wagon Train Incident,[6] where he witnessed a family perish after an automobile accident."  For the following reasons, this Court finds that Plaintiff adequately proved that the damages were related to the retaliation.

Defendant correctly states that a plaintiff is entitled to recover for emotional damages "only when a sufficient causal connection exists between the statutory violation and the alleged injury." *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977).  This standard, however, requires only that a plaintiff produce some competent evidence that the damages claimed are causally related to the defendant's illegal behavior. *See Eiland v. Westinghouse Electric Corp.*, 58 F.3d 176, 181 (5th Cir. 1995) (finding that "competent evidence that, if believed, would support the liability finding" is sufficient to "support the jury's liability determination").  That there could be alternative causes for a plaintiff's injuries poses a question that is quintessentially one for a jury to decide. *See id.* (holding that it is entirely within the jury's discretion to believe or disbelieve a witness once the witness is qualified to testify to a matter).

In this case, Plaintiff testified that his emotional damages were caused by Defendant's retaliatory actions toward him.  Defendant then argued before the jury that Plaintiff's injuries were caused, not by Defendant's behavior, but by Plaintiff's having witnessed the "Wagon Train incident."  The jury chose to reject Defendant's theory and believe Plaintiff's testimony that his emotional damages were caused by Defendant's retaliatory actions.  Because issues of credibility

---

[6] This incident occurred in 1993 while United States Customs Agents were following a suspect cross-country to conduct a controlled delivery of illegal drugs.  While driving through Arizona, the suspect decided to commit suicide and drove his vehicle into a cement pillar at a highway overpass.  In violation of customary practice, the suspect's wife and small child had been allowed to travel with him.  Both died with him.

of testimony and evidence are given to the jury for resolution, this Court cannot properly substitute its own assessment of credibility for the jury's. *See Brady v. Fort Bend County*, 145 F.3d 691, 714 (5th Cir.1998) (finding that "[a]s the trier of fact, the jury ha[s] the exclusive authority to assess the credibility of witnesses"); *Rideau v. Parkem Industrial Services, Inc.*, 917 F.2d 892, 897 (5th Cir. 1990) (holding that "[e]ven though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses"). This Court finds that Plaintiff adequately demonstrated the causal link between his injuries and the Defendant's retaliatory behavior to support the jury's verdict.

## III. Plaintiff's Motion for Attorney's Fees and Costs

Plaintiff has moved for an award of attorney's fees in the amount of $157,299, based on 524.33 hours of work billed at $300 per hour.[7]  Additionally, Plaintiff claims he is entitled to costs of $26,757.43[8] and any additional fees and costs incurred in obtaining the award.  Defendant does not challenge Plaintiff's Motion for Costs, nor do the costs sought seem unreasonable.  Therefore, this Court grants Plaintiff's request for his itemized costs.  Defendant asserts, however, that Plaintiff is not entitled to the full $157,299 claimed as attorney's fees.  Defendant argues specifically that: 1) Plaintiff's requested hourly rate of $300 is excessive, and 2) the number of hours claimed is unreasonable.

---

[7] Plaintiff previously submitted a billing statement claiming $149,325 based on 497.75 hours of work at a rate of $300 per hour.  This Court found the billing statement to be inadequate and ordered more detailed billing statements to be submitted.  The current statement incorporates time for the most recent work performed by Plaintiff's counsel.

[8] Plaintiff's previously submitted billing statement requested $26,577.01.  The revised statement, however, incorporates some recent costs not accounted for in the original statement.

9

*A. Whether Plaintiff's Hourly Rate is Excessive*

The Fifth Circuit has adopted the "lodestar" method to calculate reasonable attorney's fees. *See Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990). Using this method the district court calculates a "lodestar amount" by multiplying the number of compensable hours by a reasonable hourly rate. *See id.* When an attorney requests fees to be computed based on his customary billing rate and this rate is within the range of prevailing market rates, the requested fee should form the basis of the lodestar amount. *See Islamic Center of Mississippi, Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989). When, however, "the requested rate exceeds the attorney's usual charge but remains within the customary range in the community, the district court should consider whether the requested rate is reasonable." *Id.* In determining whether the requested rate is reasonable, the court should be guided by the relevant factors set forth in *Johnson v. Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[9]

Ronald Tonkin served as Plaintiff's sole counsel throughout this case. Because he practices in Houston, Mr. Tonkin is entitled to a fee that is reasonable and customary for Houston attorneys involved in employment litigation.[10] *See Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.1990) (asserting that the district court must select "an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." (quoting *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1084 (5th Cir. 1985))). In this case Mr. Tonkin is requesting

---

[9] There are twelve *Johnson* factors: 1) the time and labor required, 2) the novelty and difficulty of the issues, 3) the skill required to perform the legal services properly, 4) the preclusion of other employment, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or the circumstances, 8) the amount involved and the results obtained, 9) the experience, reputation, and ability of the attorneys, 10) the undesirability of the case, 11) the nature and the length of the professional relationship with the client, and 12) awards in similar cases. *Johnson v. Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

[10] Defendant does not contest that this is the appropriate standard for evaluating Plaintiff's fee request in this case.

10

a fee of $300.00 per hour. This fee exceeds his usual charge of $250 per hour but remains within the customary range of fees for attorney services in employment related matters. (*See* Schaffer Aff. Ex. A at 1, acknowledging that Mr. Tonkin's normal hourly fee is $250 but stating that "[t]he prevailing rate in Houston, Texas for attorney's services is $200-350 per hour in employment related matters"). Therefore, this Court is obligated to assess the reasonableness of Plaintiff's requested rate using the relevant *Johnson* factors as a guide. *See Strong v. Bellsouth Communications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) (acknowledging that many of the *Johnson* factors are relevant to the initial lodestar calculation).

Defendant claims that $300 per hour is an unreasonably large attorney fee for Mr. Tonkin in this case. For the reasons that follow, this Court finds that $300 per hour out of a customary range of $200-350 per hour is a reasonable rate for an attorney with the skill, experience, and success of Mr. Tonkin. First, Mr. Tonkin was the only attorney working for the Plaintiff on this Title VII case and was proceeding on multiple theories of liability. *See Johnson v. Highway Express Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974) (listing the "time and labor required" and the "novelty and difficulty of the questions" as the first two factors and "preclusion of other employment . . . due to acceptance of the case" as the fourth factor to consider in determining the reasonableness of an attorney's fee request).

Second, Mr. Tonkin's extensive experience and skill as a litigator merit a fee award at the top of the customary range of those received by attorneys in employment cases. *See id.* at 718-19 (listing "the skill requisite to perform the legal service," and "the experience, reputation, and ability of the attorney[]" as the third and ninth factors to consider in determining the reasonableness of an attorney's fee request). Mr. Tonkin has been a practicing attorney for more than thirty-six years and is licensed to practice before the United States Supreme Court, the Texas Supreme Court, the First,

11

Third, Fifth, Ninth, Tenth, Eleventh, and D.C. Courts of Appeal, and numerous Federal District Courts in Texas and elsewhere. He has held the positions of Attorney General of the U.S. Virgin Islands, Special Assistant Attorney General of the United States, and head of the United States Attorney's Office in the Laredo Division of the Southern District of Texas.

Despite Mr. Tonkin's skill and experience, Defendant asserts that $300 per hour is unreasonable because he has been charging only $250 per hour up until this case.[11] *See id.* at 718 (listing the "customary fee for similar work in the community" as the fifth factor to consider in assessing the reasonableness of an attorney's fee). An affidavit from another case of Mr. Tonkin's, was submitted by the Defendant as evidence that the hourly fee should be $250. While the affiant Clyde Williams does acknowledge $250 to be a reasonable fee, he adds that Mr. Tonkin's experience and skill would "justify billing at an even higher rate" (*See* Williams Aff. Ex. B at 2). Defendant also submitted an opinion issued from the Houston Division of the Southern District of Texas in 1999 awarding attorney's fees, in a similar type of civil rights action, at a top hourly rate of $260 to a lead attorney with seventeen years of experience. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) (listing "awards in similar cases" as the twelfth factor to consider in judging the reasonableness of a fee request). In response to questions from the Court, Defendant's counsel admitted that Defendant believes $260 per hour was entirely appropriate for an attorney with that level of experience. Because this Court does not find it unreasonable to award $40 more per hour to an attorney that works alone, has nineteen more years of experience,

---

[11] This fee differential, alone, is inconsequential to an evaluation of the reasonableness of Mr. Tonkin's fee of $300 per hour. In those cases in which Mr. Tonkin charged $250 per hour, he had also negotiated for a percentage of any recovery obtained by his client. He has negotiated a similar arrangement in this case; therefore, Mr. Tonkin's fee agreement cannot be evaluated simply by comparing hourly rates. Rather, the effect of the respective contractual agreements as to percentage recovery must also be compared. Without understanding in detail the history and original estimates of likelihood of recovery in these prior cases, such comparisons are necessarily speculative.

and achieved an even larger jury award, we find that an hourly rate of $300 is reasonable in this case.[12]

Defendant argues that even if $300 per hour is reasonable and customary for a successful attorney with Mr. Tonkin's skill and experience, it is not reasonable in this case because Plaintiff achieved only partial success in his claim. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) (listing "the amount involved and the results obtained" as the eighth factor to consider in assessing what constitutes a reasonable attorney fee); *EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1154 (5th Cir. 1995) ("the district court properly considers the relationship between the extent of the success and the amount of the fee award"). This Court finds that Plaintiff was fully successful and therefore sees no reason to reduce the $300 hourly rate.

While it is true that Plaintiff lost on two out of the three claims brought, the judgment on that remaining claim resulted in a $1 million award for Plaintiff.[13] The fact that the statute imposes a cap of $300,000 means that Plaintiff could not have been more successful even if he had won on all three claims. *See Migis  v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (asserting that "the plaintiff's monetary success in a private civil rights suit must be the primary determinant of the attorney's fee"). Further, Plaintiff not only achieved monetary success, he received the promotion

---

[12] This Court acknowledges that the instant case was tried in the Laredo Division of the Southern District of Texas. Both Plaintiff and Defendant, however, agree that the Houston legal market provides a reliable estimate of reasonable attorney rates in the Southern District of Texas in employment discrimination litigation. Defendant presented two opinions issued from the Houston Division of the Southern District of Texas as evidence to support its assessment of what would constitute a reasonable attorney fee in this case. And Plaintiff presented five affidavits from Houston attorneys describing their assessment of what rate is reasonable in the Southern District of Texas. Because both parties agree on the relevant legal market, this Court deems Houston rates to be reliable for purposes of determining a reasonable attorney fee in the Southern District of Texas. *Cf. Hopwood v. State of Texas*, 2000 WL 1868233 (5th Cir. (Tex.)) (finding that an attorney from Washington, D.C. was not entitled to a fee reasonable in D.C. when equivalent representation could have been obtained in Austin, Texas for a fee reasonable in the Austin legal market).

[13] This award was later reduced to  $300,000 because of the statutory cap placed on such compensatory damages. *See* 42 U.S.C. § 1981a(b)(3)(D).

he had been denied due to the retaliation as well as the lost back pay. *See Watkins v. Fordice*, 7 F.3d 453, 456 (5th Cir. 1993) (holding plaintiff to be a "prevailing party" entitled to attorney's fees even though they were not successful in their Voting Rights Act litigation because the litigation "caused" defendants to re-district in plaintiff's favor). Therefore, Plaintiff's outcome was fully successful and merits no reduction in attorney's fees.

For the reasons stated above,[14] this Court finds that $300.00 per hour is a reasonable fee for a Houston attorney with the experience and skill of Mr. Ronald Tonkin in this case.

## B. Whether the Number of Hours Claimed by Plaintiff is Unreasonable

Defendant also argues that the number of hours claimed by Plaintiff should be reduced because the pertinent billing records are overly vague.[15] This Court examined Plaintiff's original billing submissions and agreed with Defendant. Because plaintiffs do not have the right to bill for inadequately documented time, this Court ordered Mr. Tonkin to resubmit his billing statements and cure the previously inadequate time entries. *See Walker v. U. S. Dept. of Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996). Mr. Tonkin complied with the Order and Defendant asserted no objections to it. Thus, Plaintiff's revised billing statement will provide the basis for this Court's analysis.

Plaintiff's revised billing statement asserts that he is entitled to $157,299 in attorney's fees

---

[14] This Court finds it unnecessary to address the remaining *Johnson* factors 6, 7, 10, and 11 because they do not bear on the facts of the instant case. Further, the other 8 factors discussed weigh heavily in support of Plaintiff's request for attorney's fees. *See Copper Liquor, Inc. v. Adolph Coors Company*, 624 F.2d 575, 583 (5th Cir. 1980) (finding that *Johnson* factors 1, 5, 8, and 9 are of primary importance in assessing whether a request for attorney's fees is reasonable).

[15] Defendant specifically objects to the records at entries 7/24/98, 7/25/98, 7/26/98, 7/28/98, 7/29/98, 7/31/98, 8/20/98, 8/27/98, 9/1/98, 10/8/98, 11/1/98, 6/1/99, 6/8/99, 8/10/99, 8/11/99, 2/1/00, 3/9/00, 3/14/00, 3/27/00, and 6/28/00.

14

based on 524.33 hours of work billed at $300 per hour.  Because plaintiffs petitioning for attorney

fees bear the burden of "showing the reasonableness of the hours they bill," Plaintiff has produced

five affidavits from reputable attorneys in support of his petition. *Walker v. U. S. Dept. of Housing

and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996).  Defendant has asserted no objections to

either the validity of the affidavits or the reasonableness of the total hours claimed.  Therefore, this

Court finds the hours documented in Plaintiff's revised billing statement are reasonable overall.

A plaintiff, however, must not only demonstrate the reasonableness of the total hours, but

that the "particular hours claimed were reasonably expended."  *Alberti v. Klevenhagen*, 896 F.2d

927, 932 (5th Cir. 1990).  This requires a plaintiff to detail the work performed with enough

specificity to allow a court to determine the reasonableness of the hours claimed.  *See Watkins v.

Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  While Plaintiff's original Petition for Attorney's Fees

contained overly vague time entries, these inadequacies were cured in Plaintiff's revised billing

statement.  Thus, Plaintiff's revised billing statement adequately documents the time spent by Mr.

Tonkin on this case.

In assessing the reasonableness of the particular hours documented by a plaintiff, courts must

make two determinations.  First, the hours billed must have been for time reasonably spent on work

in furtherance of claims on which the plaintiff "prevailed."  *See Von Clark v. Butler*, 916 F.2d 255,

259 (5th Cir. 1990) (holding that a plaintiff must prove "the reasonableness of the number of hours

expended on his prevailing claim").  Second, the attorney must have demonstrated adequate billing

judgment by "writing off unproductive, excessive, or redundant hours."  *Walker v. U.S. Dept. of

Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996).

Plaintiff has submitted revised billing records detailing the hours spent by Mr. Tonkin

pursuing the allegations of age discrimination, race discrimination, and retaliation.  Plaintiff

15

correctly subtracted the 1.5 hours spent researching the age discrimination claim that this Court dismissed because Plaintiff cannot be considered a "prevailing party" on that claim. Mr. Tonkin, however, was unable to separate the time spent in pursuing Plaintiff's race discrimination and retaliation claims. Because the jury found for Plaintiff only on the retaliation claim, this Court must decide whether Plaintiff can be deemed to have "prevailed" on both theories of liability or whether the attorney's fee award should be reduced to reflect only the hours spent pursuing the retaliation claim.

When a plaintiff's claims "are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims . . . '[t]he congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.'" *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 789 (1989) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). However, where a "plaintiff's claims arise out of a common core of facts, and involve related legal theories," the Supreme Court has held that "the most critical factor, is the degree of success obtained." *Id.*

In the instant case, Plaintiff's claims for discrimination and retaliation stem from the same set of facts and involve related legal theories.[16] Plaintiff's mistreatment from his superiors, his subsequent EEOC complaints, and his non-promotion were all presented as evidence of both racial discrimination and retaliation. Because of this evidentiary overlap, Plaintiff was unable to separate

---

[16] The only federal courts that have addressed the legal relationship between a plaintiff's claims for discrimination and retaliation have held them to be indistinguishable for purposes of determining "prevailing parties" in attorney fee petitions. *See Dailey v. Societe Generale*, 915 F. Supp. 1315, 1330 (S.D.N.Y. 1996) (finding it "clear that the factual and legal underpinnings of the plaintiff's discrimination and retaliation claims were both factually and legally interrelated"); *Dallessandro v. Monk*, 1989 WL 97840 (S.D.N.Y.) (finding that "because of the overlap in fact and in law between the two claims of age discrimination and retaliatory discharge, the court cannot exclude the hours plaintiff's attorney had spent" on the unsuccessful age discrimination claim).

the time spent pursuing each claim. Because so much of Mr. Tonkin's time "w[as] devoted generally to the litigation as a whole," Plaintiff's "lawsuit cannot be viewed as a series of discrete claims." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Further, Plaintiff was awarded the maximum amount of damages he was allowed to receive under the statute. Therefore, this Court declines to reduce Plaintiff's attorney's fees to reflect his unsuccessful claim for racial discrimination.

While Mr. Tonkin's billing statement shows no compensable hours to have been written off,[17] this Court finds that he exercised proper billing judgment.[18] Having examined each of Plaintiff's billing entries individually, this Court finds that Mr. Tonkin included no "unproductive, excessive, or redundant hours" in his billing statement. *Walker v. U.S. Dept of Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996). Each time entry bills for a reasonable amount of time spent on activities reasonably conducted in pursuing Plaintiff's claims. *Cf. Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (finding that the district court failed to "determine[] if particular hours claimed were reasonably expended on the litigation"). Further, Mr. Tonkin billed no hours for either paralegal or clerical time spent on this case despite the fact that he

---

[17] Mr. Tonkin asserts in his Supplemental Memorandum of Law that his deduction of 1.5 hours of time spent on 8/19/98 researching the age discrimination issue from his fee petition demonstrates billing judgment. However, this Court declines to rely on this as evidence of Mr. Tonkin's billing judgment. Plaintiff was not a "prevailing party" on the age discrimination issue and it is unclear whether that claim could be said to "involve a common core of facts" or "related legal theories" such that it could be treated as part of the Title VII claim. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (5th Cir. 1983). Because "plaintiffs do not have the right to bill for . . . time on issues on which they do not prevail," Mr. Tonkin cannot be said to have exercised billing judgment in deducting the 1.5 hours of non-compensable time. *See Walker v. U.S. Department of Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996).

[18] While this Court recognizes the importance of attorney billing judgment, we do not find reason to doubt Mr. Tonkin's judgment in this case. Traditionally, the exercise of billing judgment has been most closely scrutinized in cases involving multiple attorneys working for one side. *See Walker v. U.S. Department of Housing and Urban Development*, 99 F.3d 761, 768 (5th Cir. 1996) (finding that "[i]f more than one attorney is involved, the possibility of duplication of effort along with proper utilization of time should be scrutinized") (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)). In the instant case Mr. Tonkin worked alone. Therefore, there is far less danger that the billing statement contains excessive or redundant hours.

17

could have billed for that time. *See Walker v. U.S. Dept of Housing and Urban Development*, 99 F.3d 761, 770-71 (5th Cir. 1996) (finding that paralegal and clerical work could be recovered as attorney fees, but "may command a lesser rate").

Defendant's final argument is that the preparation of the invoice for attorney fees, dated July 2, 2000, is a purely clerical task that should not have been billed at the attorney rate. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (finding that "non-legal work may command a lesser rate . . . . [i]ts dollar value is not enhanced just because a lawyer does it"). This Court disagrees with Defendant and finds that, in this case, the preparation of the computerized invoice was an integral part of preparing Plaintiff's Motion for Attorney Fees and Costs. And the preparation of such motions requires legal knowledge and skill beyond the capabilities of clerical staff. Involving clerical staff would have been unlikely to have reduced the hours Mr. Tonkin had to devote to the task and would have added an additional layer of expense. Accordingly, this Court rejects Defendant's contention that Mr. Tonkin's time preparing the computerized billing statement attached to Plaintiff's Motion for Attorney's Fees should be compensated at a lower amount.

This Court recognizes the importance of scrutinizing fee applications and assessing their reasonableness in light of statute and precedent. Fee requests that do not meet the applicable criteria cannot lawfully be granted. However, fee requests that do meet the criteria cannot lawfully be denied. Such a denial would do violence both to precedent and statute. Having reviewed each billing entry, this Court concludes that Plaintiff, in the instant case, has demonstrated both the reasonableness of the total hours claimed and that the particular hours documented were reasonably expended. Therefore, this Court finds that Plaintiff is entitled to receive compensation for the full 524.33 hours of work billed by Mr. Tonkin.

18

*C. Whether the Lodestar Should be Adjusted*

Adjustments to the lodestar based on the *Johnson* factors are permissible, but only in "rare and exceptional cases supported by both specific evidence . . . and detailed findings." *Shipes v. Trinity Industries*, 987 F.2d 311, 320 (5ᵗʰ Cir. 1993). As neither party has requested any adjustments and the Court observes no facially obvious need for them, no adjustments to the lodestar will be granted.

**CONCLUSION**

Defendant's Motion for Remittitur is hereby DENIED and Plaintiff's Motion for Attorney's Fees and Costs is hereby GRANTED in the amount of $156,849.00 in fees and $26,757.43 in costs.

IT IS SO ORDERED.

SIGNED this ___ day of January, 2001.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**To insure full notice, each party who receives this notice shall forward a copy of it to every other party and affected non-party even though they may have been sent one by the Court.**